IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DEACOM, INC., )
)
        Plaintiff, )
)
v. ) 1:08CV346
)
SOUTHEASTERN MATERIALS, )
INC., )
)
        Defendant. )

**MEMORANDUM OPINION AND ORDER**

**SHARP, Magistrate Judge**

This matter comes before the Court on cross-motions for summary judgment. (Docket Nos. 24, 26.) These motions have been fully briefed by the parties. Plaintiff Deacom, Inc. (Deacom) has also filed a motion to strike the reply brief of Defendant Southeastern Materials, Inc. (Southeastern). (Docket No. 33.) The parties have consented to the exercise of jurisdiction by the undersigned, and the action has been referred for all proceedings. (Docket No. 27.) For the reasons stated herein, the Court denies both motions for summary judgment. Plaintiff's motion to strike is also denied.[1]

---

[1] Plaintiff moves to strike Defendant's reply brief because it was allegedly filed three days past the filing deadline. However, because the docket sheet showed a reply deadline of April 23, the date that Defendant filed its reply brief, the Court declines to strike the brief.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and Plaintiff entered into an agreement on December 3, 2007, pertaining to Plaintiff's sale to Defendant of software which Defendant would use in its business. (Docket No. 1, Complaint ("Compl.") at 2; Docket No. 19, Answer ("Def.'s Answer") at 1.) The first page of this agreement is entitled "License Agreement for DEACOM® Software System." (Compl., Ex. A.) The first section lists the prices for six components of the software system of which only four are relevant to Defendant. These four are:

| | |
|---|---|
| Main DEACOM system: | 1 @ $75,000 each |
| Concurrent users–main system: | 15 @ $2,000 each |
| Shop floor data collection software: | 1 @ $12,000 each |
| Implementation services: | 1 @ $110,000 each |

(*Id.*) The total cost of the system is $227,000. (*Id.*)

The second section of the first page of the agreement refers to the "attached Software License Agreement, which is included herein." (*Id.*) Three additional pages are attached to the first page under the heading "Deacom, Inc. Software License Agreement." (*Id.*) The first paragraph of the second page reads as follows:

> This License Agreement ("Agreement") is a legal agreement by and between Licensee ("Licensee") and Deacom, Inc. ("Deacom"), for the DEACOM® product or products listed in the attached License Agreement ("Software"). By allowing this Software to be installed on Licensee's computers or otherwise using the Software, Licensee agrees to be bound by the terms of this Agreement.

(*Id.*)

The first page of this agreement is the only page that is signed by the parties' representatives. (*Id*.) That page includes the payment terms of five monthly installments of $45,400 each beginning on December 15, 2007 and ending on April 15, 2008. (*Id*.)

Defendant contends that in late January 2008, because of a downturn in its business, it asked Plaintiff to "defer implementation of the License Agreement until June 1, 2008, but Deacom refused to consider this request and instead filed suit." (Docket No. 25, Pl.'s Br. in Supp. of Mot. for Summ. J., Ex. A, Def.'s Resps. to Requests for Admission at 1-2.) Defendant never made any payments to Plaintiff. (*Id*. at 2.) Defendant argues that the installation of Plaintiff's software was a condition precedent to the License Agreement becoming effective and that "the software was never installed." (Def.'s Answer ¶¶ 10-11.) Defendant admits, however, that Plaintiff forwarded training documents and system manuals to Defendant to initiate the process of installing the Plaintiff's software. (Compl. ¶ 7; Def.'s Answer ¶ 7.)

Plaintiff refers to the license agreement as two separate agreements. The first page Plaintiff calls the "purchase agreement" and attached to it is "a separate Software License Agreement." (Docket No. 31, Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 2.) By signing the "purchase agreement," Plaintiff contends that Defendant entered into a valid contract to purchase the software and breached that contract by not paying for the software as agreed. (*Id*. at 4-6.) Breach of contract is the only cause of action stated in Plaintiff's complaint. Plaintiff argues that the alleged condition precedent identified by Defendant does

-3-

not apply to the first page of the contract and that Defendant's argument fails to give any effect to the first page of the agreement. (*Id*. at 7.)

### DISCUSSION

**A.     Governing Law**

Summary judgment is appropriate only when no genuine issue of material fact exists. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. (*Id.* at 255.) The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." (*Id*. at 718-19 (citing *Anderson*, 477 U.S. at 247-48).) A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. *See, e.g., Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *see also Anderson*, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials).

The contract at issue states that "THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA." (Compl., Ex. A ¶ 11.) Defendant contends that "[i]t is questionable" whether Pennsylvania law should be used because the Agreement may have never become binding. (Docket No. 29, Def.'s Br. in Supp. of Mot. for Summ. J. at 4.) However, the law of either Pennsylvania or North Carolina must govern in determining whether the contract became effective. Under the terms of the contract, Pennsylvania law should be used. Under Pennsylvania law in order to establish breach of contract, the plaintiff must show the existence of a contract, a breach of a contractual duty, and resulting damages. *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005).

**B.** **Composition of the Contract**

The parties disagree on whether they entered into one or two contracts. Plaintiff contends that the first page of the agreement is the "purchase agreement" and is separate from the "software license agreement" which is attached. (Docket No. 31 at 2.) Defendant, on the other hand, argues that there is "a single, unified Agreement." (Docket No. 32 , Def.'s Reply Br. in Supp. of Mot. for Summ. J. at 1-2.)

The Court finds that there is no material issue of fact on this issue. The five pages of the agreement must be viewed as a single contract. The reasons for this conclusion are as follows. First, the first page of the agreement refers to the attached pages and states that they are "included herein." (Compl., Ex. A at 1.) Second, Plaintiff's Complaint refers to all of

these pages as a single contract. (Compl. ¶¶ 4, 5, 6, 9, 10.) Third, Plaintiff's president testified during his deposition that Plaintiff sent the agreement to Defendant as a "package," and there was no intent to have Defendant sign pages 2-4 of the agreement. (Docket No. 26, Def.'s Mot. for Summ. J., Ex. B, Deposition of Jay T. Deakins, at 24-25.) Accordingly, the Court construes all four pages as a single contract.

C.  **Condition Precedent**

Because the Court rejects Plaintiff's argument that there are two separate agreements, Defendant's argument that the language of the second page of the contract contains a condition precedent to the entire contract becoming effective has merit. The language defining when Defendant becomes bound by the contract may not be construed to apply only to pages 2-4 of the contract, as Plaintiff argues. Under the terms of the contract, Defendant agrees to be bound by "allowing this Software to be installed on [Defendant's] computers or otherwise using the Software." (Compl., Ex. A at 2.) Although the Court finds that there is no genuine issue of fact on whether this is a condition precedent as to the entire contract, there is a question of fact whether the condition was met.

The "Software" referred to in this paragraph is identified in the same paragraph as "the DEACOM® product or products listed in the attached License Agreement." (*Id*.) The Court construes this reference to be to the first page and its listing of the six components identified above. Plaintiff's president, Jay Deakins, testified during his deposition that Plaintiff never supplied Defendant with the link to download the main Deacom system, the

-6-

first item. (Docket No. 30, Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., Ex. B, Deposition of Jay T. Deakins, at 55.) The second item is for concurrent users to the main system. Because there was no main system software provided, there is no showing that Defendant became liable for any concurrent users to that system. Mr. Deakins also testified that the third item and fifth item were not provided to Defendant. (*Id*. at 56.) The fourth item is "Shop floor data collection software." Mr. Deakins testified that the link to download this software was not provided but that "[a]ll the documentation for both the main system and the software were provided." (*Id*.) Also, Mr. Deakins testified that Plaintiff provided implementation services (the sixth item) to Defendant by having their "kick-off meeting" and sending the "materials" to Defendant. (*Id*. at 57.) Mr. Deakins also testified about the work Plaintiff completed after the kick-off meeting "until Christmas" such as performing data conversion and having conversations with Defendant's representatives. (*Id*. at 58-59.)

Plaintiff's implementation specialist, Paul Heinmiller, testified during his deposition that he sent an email to Defendant as part of the implementation process which contained support materials for Defendant's representatives to read. (Docket No. 30, Ex. C, Deposition of Paul A. Heinmiller, at 13.) These materials were attached to the e-mail as PDF files. (*Id*.) Mr. Heinmiller also testified that in late December 2007 he talked to Maria Dennis of Defendant's company by phone to confirm that Defendant had received the e-mail with the documentation. (*Id*. at 30.) Ms. Dennis told him that "they were reading the materials" and would touch base after the holidays. (*Id*.)

-7-

Case 1:08-cv-00346-PTS   Document 35   Filed 02/09/10   Page 7 of 8

first item. (Docket No. 30, Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., Ex. B, Deposition of Jay T. Deakins, at 55.) The second item is for concurrent users to the main system. Because there was no main system software provided, there is no showing that Defendant became liable for any concurrent users to that system. Mr. Deakins also testified that the third item and fifth item were not provided to Defendant. (*Id*. at 56.) The fourth item is "Shop floor data collection software." Mr. Deakins testified that the link to download this software was not provided but that "[a]ll the documentation for both the main system and the software were provided." (*Id*.) Also, Mr. Deakins testified that Plaintiff provided implementation services (the sixth item) to Defendant by having their "kick-off meeting" and sending the "materials" to Defendant. (*Id*. at 57.) Mr. Deakins also testified about the work Plaintiff completed after the kick-off meeting "until Christmas" such as performing data conversion and having conversations with Defendant's representatives. (*Id*. at 58-59.)

Plaintiff's implementation specialist, Paul Heinmiller, testified during his deposition that he sent an email to Defendant as part of the implementation process which contained support materials for Defendant's representatives to read. (Docket No. 30, Ex. C, Deposition of Paul A. Heinmiller, at 13.) These materials were attached to the e-mail as PDF files. (*Id*.) Mr. Heinmiller also testified that in late December 2007 he talked to Maria Dennis of Defendant's company by phone to confirm that Defendant had received the e-mail with the documentation. (*Id*. at 30.) Ms. Dennis told him that "they were reading the materials" and would touch base after the holidays. (*Id*.)

Based on this evidence, a material issue of fact exists on whether the condition precedent was satisfied by Defendant opening the PDF files sent by Plaintiff. In addition, there is a question whether the data conversion (which is included as a part of "implementation services" under the terms of the contract) and other implementation actions performed by Plaintiff satisfy the condition precedent. Accordingly, summary judgment may not be granted to either Plaintiff or Defendant.

This action will be set for a bench trial at a later date to determine whether Defendant allowed "Software to be installed on [Defendant's] computers or otherwise us[ed] the Software." (Compl., Ex. A at 2.)

## Conclusion

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's motion for summary judgment (Docket No. 24) is **DENIED**, and that Defendant's motion for summary judgment (Docket No. 26) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike (Docket No. 33) is **DENIED.**

                                             /s/ P. Trevor Sharp
                                             United States Magistrate Judge

Date: February 9, 2010